No. 31,733

THE GIANT MANUFACTURING COMPANY, *Appellee*, v. THE CITY OF WAMEGO, *Appellant*.

(41 P. 2d 744)

Opinion filed March 9, 1935.

*D. C. Hill*, of Wamego, and *Albert M. Cole*, of Holton, for the appellant.
*B. C. Pickering*, of Wamego, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a proceeding under what is known as the cash-basis law (Laws 1933, ch. 319, R. S. 1933 Supp. 10-1101 *et seq.*). The Giant Manufacturing Company of Council Bluffs, Ia.,

hereinafter called plaintiff, presented its claim to the governing body of the city of Wamego for $1,058.01, with six per cent interest since May 15, 1933, being the balance due on the purchase price of certain floodlights sold the city in January, 1930. The city disallowed the claim. Plaintiff appealed to the district court, where the claim was allowed after a hearing. The city has appealed.

Briefly, the facts may be stated as follows: In November, 1929, the city of Wamego and the people of that vicinity were having a celebration on the occasion of the opening of a new bridge across the Kaw river at that point. Plaintiff manufactured and sold floodlights. Such lights and their use were then new. Plaintiff was anxious to have its lights used at this celebration for demonstration purposes, thereby advertising the lights and their use and with the hope that it might later sell them to the city of Wamego, or elsewhere. Plaintiff had a local agent, J. A. McMillen, at Wamego. He and a representative of plaintiff, from Council Bluffs, took the matter up with the city officials, specifically advising them that the use of the lights for that purpose would create no financial obligation on the city. The lights were sent to Wamego. The city had its own light plant and furnished the electricity. The lights were used on the occasion of the celebration. Plaintiff permitted them to remain there and they have been used at least a part of the time since then.

By a city ordinance the management and government of the city park was lodged in a board of trustees appointed by the mayor and confirmed by the council. This board was commonly spoken of as the park board, and at the time here important consisted of one member of the city council and three other persons not otherwise connected with the city government. The ordinance gave to the board the exclusive control of the expenditure of all moneys collected and placed to the credit of the park fund, the supervision, care and control of the park grounds and appurtenances, power to appoint necessary employees, fix their compensation and discharge them, and provided that all moneys received for the park in any year, except the amount necessary for operating, repairing, or building expenses, should be placed in a fund in one of the local banks, protected by a surety bond in favor of the city. The park fund was created by a tax levy for park purposes and moneys received from concessions at fairs, picnics, athletic meets, and a swimming pool. The ordinance did not give the park board authority to contract debts to be paid in future years for permanent improvements, and

before any large amount of money was spent the park board received authority from the governing body of the city.

In January, 1930, plaintiff's representative asked the city governing body to authorize the park board to buy these lights. The minutes of the meeting on that question read as follows:

"J. A. McMillen presented proposition for park board to acquire floodlights in the park, a permanent improvement at a cost of $1,100, with 6% interest, deferred payments, with privilege of renewing at end of year at same interest. Matter discussed at length. Moved by Schmitz and seconded by Salter that the park board work up a contract and submit for approval or rejection. Carried."

The park board did not work up a contract and submit it to the governing body of the city for approval or rejection, but on January 15, 1930, plaintiff and the park board entered into an agreement in writing by which the plaintiff sold to the park board, and it purchased, the floodlights above mentioned for the sum of $1,100, to be paid within three years, with interest (at what rate is not stated), with the privilege of paying any amount at any time. The evidence discloses this was signed by different members of the park board when they were not at a meeting.

It appears that neither the mayor nor the members of the city council other than the one on the park board knew of this contract, and the matter was not suggested again to the city council until its October meeting in 1930. The minutes of that meeting read as follows:

"J. A. McMillen, C. G. Warner, C. J. Downer and C. C. Spangler discussed the mater of floodlights in the park; thought $200 could be raised from another celebration. Park board authorized to contract for lights, they to make contract with the school board who were to guarantee $250 and the city of Wamego to guarantee the last $300. Moved to adopt by Rheumann and seconded by Schmitz and carried."

On October 30, 1930, the park board remitted $100 to plaintiff, and about a month later remitted $121.14. There is evidence that this money was received from concessions and not from taxes levied for park purposes.

About May 1, 1931, when a new mayor and council had been elected and taken office the ordinance for the management of the city parks by a board of trustees was repealed. Some money then in the park fund was turned over to the city treasurer. How much this fund was, or from what sources it had been accumulated, is not shown.

Aside from a futile effort by plaintiff to get the school board to pay something on this contract in December, 1931, nothing appears to have been done until after the passage of the cash-basis law in 1933, when plaintiff presented its bill to the city council for the balance claimed to be due.

The principal question argued here is whether plaintiff had a binding contract with the city for the sale and purchase of these lights. It is clear there was no such contract with the governing body of the city. Appellee contends the contract made by plaintiff with the park board is in legal effect a contract with the city, and binding upon it. Passing the question whether the governing body of the city could delegate such authority to the park board as not being necessary to be decided here, there are two answers to this contention: (a) The ordinance creating the park board and defining its powers and duties gave it no authority to make expensive permanent improvements to be paid for in future years, and (b) the plaintiff knew that. When its representative was present at the city council meeting January 7, 1930, he was bound to know the park board's authority respecting the purchase of the lights was limited to ascertaining the most advantageous terms on which the lights might be purchased and reporting to the governing body of the city for its approval or rejection. This never was done. In fact, it seems that the contract which plaintiff made with the park board purposely was kept away from the mayor and other members of the city council. As late as October of that year plaintiff still was negotiating with the governing body for the purchase of these lights just as though it had no contract with the park board. At that time the city agreed conditionally to pay the last $300 on the purchase price of the lights. This was on the theory or hope that the rest of the money could be raised in some other way. But this plan never was carried out. Plaintiff does not rely upon this as a purchase of the lights by the city, and, indeed, could not well do so. At no time thereafter does the record show plaintiff contended the city had purchased these lights until it filed its claim with the city in 1933 under the cash-basis law. It is clear plaintiff had no contract with the city binding it to purchase or pay for the lights.

Appellee contends that inasmuch as the lights have been in place and used since the fall of 1929 the city should be required to pay for them even though the contract for purchase was irregular or

insufficient in itself. Cases are cited in which a city had the benefit of improvements, such as paving or city buildings, and it has been held liable on the theory of estoppel or ratification, although the contract made for the work was irregular or technically insufficient in some respects. That doctrine is not applicable here. Plaintiff solicited the opportunity to have these lights installed for its own benefit, urged they be kept there, invited their further use for the same purpose, and with the hope that it might be able to sell them. It has not been able to sell them. The simple fact that the city assisted plaintiff in advertising its products is insufficient to establish such estoppel or ratification as binds the city to pay.

The result is, there is no substantial evidence to sustain the judgment of the trial court, and it is reversed with directions to enter judgment for defendant.